**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TIMOTHY LEE TAYLOR, Individually,

        Plaintiff,

v.                                    CIVIL ACTION NO.  2:05-cv-00445

COMMTEC/POMEROY COMPUTER
RESOURCES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

In January 1997, the West Virginia Department of Education ("WVDE") issued an official Request for Proposal ("RFP") to solicit bids for a comprehensive computer system in state schools. The defendant, Commtec/Pomeroy Computer Resources, Inc. ("Pomeroy"), submitted the successful bid and entered into a contract ("the SUCCESS contract") with the WVDE on July 8, 1997.  The plaintiff, Timothy Lee Taylor, allegedly worked for Pomeroy on this contract as a cable installer.

Beginning in July 1998, the WVDE investigated Pomeroy to determine whether it was in compliance with West Virginia law governing state contracts.  The Division of Labor found that the West Virginia Prevailing Wage Act ("PWA"), W. Va. Code §§ 21–5A–1 to –11 (Repl. Vol. 2002), applied to Pomeroy's contract with the WVDE.  Specifically, the investigation revealed that a category of Pomeroy's workforce classified as cable pullers was entitled to electricians' wages. Following the investigation, the Division of Labor initiated an administrative proceeding against Pomeroy.  On June 14, 2000, the administrative proceeding determined Pomeroy was required to pay its cable pullers the prevailing wage for electricians.  Circuit Judge Tod Kaufman of the Circuit

Court of Kanawha County affirmed the decision on March 5, 2001, and held that Pomeroy owed the workers $255,859 in unpaid prevailing wages and $255,859 in statutory penalties.  In a second administrative proceeding, an administrative hearing examiner ruled that Pomeroy did not make an honest mistake in failing to pay prevailing wages to the workers.  The Commissioner of Labor affirmed this decision on July 22, 2002, and the West Virginia Supreme Court of Appeals denied Pomeroy's petition for appeal on January 15, 2004.

Pomeroy then refused to pay, and the Division of Labor filed a motion to enforce the judgment with Judge Kaufman.  Following some questions about the Commissioner of Labor's enforcement authority, the Division of Labor and Pomeroy entered into a settlement agreement.  As a condition of the settlement, the Division of Labor waived the statutory penalty originally assessed by Judge Kaufman.  Pursuant to the agreement, Pomeroy offered each worker a sum of money in exchange for a complete release of claims.  Although most workers accepted the offer and signed a release, the plantiff did not.

The plaintiff then filed this action in the Circuit Court of Kanawha County against Pomeroy, who removed it to this court based on diversity jurisdiction.  Previously, I denied the defendant's motion to dismiss the plaintiff's suit on statute of limitations grounds.  *Taylor v. Commtec/Pomeroy Comp. Res., Inc.*, 2006 U.S. Dist. LEXIS 10172 (S.D. W. Va. Feb. 15, 2006).  Three summary judgment motions are now pending:

> 1.  Plaintiff's motion for summary judgment predicated on principles of res judicata and the *Rooker-Feldman* doctrine [Docket 52].
>
> 2.  Defendant's motion for summary judgment on grounds that the PWA does not apply to the SUCCESS contract [Docket 54].

3.  Defendant's partial motion for summary judgment on grounds that if the PWA does apply to the SUCCESS contract, the plaintiff is precluded from recovery because the defendant made an honest mistake [Docket 56].

Because I **FIND** that the PWA does not apply to the SUCCESS contract, I **GRANT** the defendant's motion in full [Docket 54], **DENY** the plaintiff's motion [Docket 52], and **DENY as MOOT** the defendant's motion for partial summary judgment [Docket 56].

### I. Summary Judgment Standard

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The opposing party must demonstrate that a genuine issue of material fact exits; mere allegations or denials are insufficient. *Liberty Lobby*, 477 U.S. at 248.  A mere scintilla of evidence supporting the case also is insufficient. *Id*.; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Matsushita*, 475 U.S. at 587–88.

### II.  The Prevailing Wage Act

The PWA protects laborers working on public improvement projects from substandard wages by requiring employers to pay at least the prevailing wage for each specialization. *Affiliated Constr.*

*Trades Found. v. Univ. of W. Va. Bd. of Trs.*, 557 S.E.2d 863, 873 (W. Va. 2001).  Specifically, the

PWA provides:

> It is hereby declared to be the policy of the State of West Virginia that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in this State in which the construction is performed shall be paid to all workmen employed by or on behalf of any public authority engaged in the construction of public improvements.

W. Va. Code § 21–5A–2.  The PWA applied to the SUCCESS contract if the SUCCESS contract

involved "the construction of public improvements."[1]

The PWA defines a "public improvement" as "*buildings*, roads, highways, bridges . . . and

all other structures upon which construction may be let to contract by the State of West Virginia or

any political subdivision thereof."  W. Va. Code § 21–5A–1(4) (emphasis added).  To determine

whether a "public improvement" falls under the PWA's definition, the West Virginia Supreme Court

of Appeals examines:

> (1) [W]hether a public entity initiated the construction project; (2) the extent of control retained by the public entity during the development and construction phases; (3) the extent to which the project will be used for a public purpose; (4) whether public funds are used either directly for the costs of construction or indirectly by means of a lease arrangement which contemplates payments essentially covering the amount of the construction; (5) whether the contract is written as a lease solely to evade the requirements of the prevailing wage act; and (6) all other relevant factors bearing on the

---

[1]        The defendant also argues that the PWA did not apply to the SUCCESS contract because the contract did not contain "statutorily and regulatorily [sic] mandated provisions." (Def.'s Mem. Supp. Mot. for Summ. J. 6.)  Specifically, the defendant cites to sections of the PWA requiring any contract covered by the PWA to contain certain provisions. (*Id.* (citing W. Va. Code §§ 21–5A–3, –6).)  The defendant argues that without the inclusion of these provisions, a contract cannot be covered by the PWA.  The defendant misreads the statute on this point.  Whether the contract contains these provisions has no bearing on PWA coverage.  The PWA's coverage is determined exclusively by § 21–5A–2.  The provisions the defendant cites provide only that whenever the PWA applies to a contract, that contract must contain these provisions.

> ultimate issue of whether the project is indeed a public project notwithstanding novel financial mechanisms.

*Affiliated Constr. Trades Found.*, 557 S.E.2d at 876.  For the purposes of this opinion, I will assume the SUCCESS contract constitutes a "public improvement" under the PWA.

To qualify under the PWA, however, the contract must not only involve a "public improvement" but also must involve the "construction of" a public improvement.  W. Va. Code § 21–5A–2.  The PWA defines "construction" as "any construction, reconstruction, improvement, enlargement, painting, decorating, or repair of any public improvement let to contract."  *Id.* § 21–5A–1(2).  The Act also explains that "'construction' shall not be construed to include temporary or emergency repairs."  *Id.*  Unlike the phrase "public improvement," the West Virginia Supreme Court has not provided guidance on interpreting the term "construction."[2]  In addition, neither party cited any case law for determining the proper interpretation of the term.

The SUCCESS contract was an "open end contract for hardware, software, and services." (Ex. B to Def.'s Mot. for Summ. J.)  The contract included six mandatory project components: 1) system integration responsibilities; 2) software, courseware, and curriculum materials; 3) staff development; 4) hardware; network and workstation operating system software; 5) network cabling services and accessories; and 6) on-going support.  (*Id.*)  The defendant attached the affidavit of a Pomeroy Regional Vice President—William A. Rutherford—to its summary judgment motion to explain that the defendant's cable pullers installed low-voltage wiring for the systems set forth in the SUCCESS contract.  (Ex. C to Def.'s Mot. for Summ. J.)  The defendant's motion contends that

---

[2]    In approving the hearing examiner's determination that Pomeroy had not committed an honest mistake in failing to pay the prevailing wage, Judge Kaufman would have had to assume that the PWA actually applied to the SUCCESS contract.  Judge Kaufman nor the West Virginia Supreme Court, however, actually interpreted the PWA's applicability.

low-voltage cable wiring transmits messaging only, and thus differs from high-voltage cable wiring that transmits electricity.  (Mem. Supp. Def.'s Mot. for Summ. J. 2.)  The defendant argues "the running of computer cabling does not rise to the level of 'construction' within the meaning of the PWA."  (*Id*. at 5.)  The plaintiff's response to the defendant's summary judgment motion inexplicably fails to address this argument.  Instead, the plaintiff relies on the arguments that res judicata and the *Rooker-Feldman* doctrine apply.

To examine whether the installation and maintenance of a comprehensive technological system in a public improvement constitutes "construction" as contemplated by the PWA, the interpretations of other States' comparable wage laws are helpful.  New Mexico has considered whether its law, which is comparable to the PWA, applies to the installation of a telecommunications system within a state university.  *Univ. Commc'ns. Sys., Inc. v. Smith*, 726 P.2d 1384, 1385 (N.M. 1986).  The New Mexico law applied to state contracts "for construction, alteration, demolition or repair, or any combination of these, including painting and decorating of public buildings."  N.M. Stat. § 13–4–11 (Repl. Pamp. 1985).[3]  The facts of the New Mexico case are strikingly similar to the case at bar though that case involves telephones instead of computers.  The company sold, delivered, and installed a telecommunications system in existing buildings.  *Smith*, 726 P.2d at 1385.  It "interconnected the system" using cables, which were installed in tunnels under the university that led to intermediate distribution frames.  *Id*.  Once completed, the system serviced 9,000 individual

---

[3]       The New Mexico statute is nearly identical to the federal prevailing wage law passed in the Davis-Bacon Act.  *See* 40 U.S.C. § 3142(a) (2000) (applying to federal contracts for "construction, alteration, or repair, including painting and decorating, of public buildings and public works" of the federal government).

telephones on campus.  *Id.* at 1385–86.  The court concluded that the installation was not "construction" because:

> There was nothing in the way of erection or alteration of any University building or structure.  The cables were run through existing tunnels, and the cabinets which housed the computer and switching equipment were bolted to the floor of the telecommunication building which was owned by the University.  The wires were run through existing conduit which are typically installed at the time a building is constructed.  In the few cases where the conduit did not already exist, UCS covered the wire with a plastic molding.

*Id.* at 1386.

The New Mexico Supreme Court's reasoning was adopted by a Minnesota court in *C&C Teletronics, Inc. v. U.S. West Info. Sys., Inc.*, 414 N.W.2d 758, 762 (Minn. Ct. App. 1987).  In that case, the court found that the state's prevailing wage law did not apply to a contract to furnish equipment and install lines for the University of Minnesota's telecommunications switching system. *C&C Teletronics*, 414 N.W.2d at 760.  The contract contemplated the installation of equipment, the pulling of wire between equipment locations, and the placement of wall jacks.  *Id.*  No connections were made between buildings and no more than 400 holes were drilled to secure surface phone jacks.  *Id.*  Like the New Mexico court, the Minnesota court concluded that the contract did not involve "construction" as defined in the applicable prevailing wage statute.  *Id.* at 763.

The only relevant distinction between West Virginia's PWA and the prevailing wage laws in New Mexico and Minnesota is the PWA's inclusion of the word "improvement" in its definition of "construction."  W. Va. Code § 21–5A–1(2).  The use of the term "improvement," however, does not change the result.  The word falls between "reconstruction" and "enlargement."  *Id.*  In this context, it is clear that some type of physical improvement to a structure must occur.  This reading is consistent with *Black's Law Dictionary*'s definition of the term:

> Improvement: A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.  Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc.  An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.  Such expenditures are capitalized as part of the asset's cost.

*Black's Law Dictionary* 757 (6th ed. 1990); *see also Pippin v. Reilly Indus., Inc.*, 64 Fed. App'x 382, 385 (4th Cir. 2003) (unpublished) (citing this definition).  The SUCCESS contract cannot be classified as an "improvement" to a "public improvement" under the PWA.

Based on the facts presented in the defendant's summary judgment motion and its accompanying exhibits, the SUCCESS contract was not a contract for the "construction of public improvements" as contemplated by the PWA.  The plaintiff failed to come forward with any evidence showing otherwise.  The factual record, which the plaintiff did not dispute as to the PWA's applicability, reveals that the PWA does not apply to the SUCCESS contract.  Accordingly, the defendant is entitled to judgment as a matter of law.

### III. Res Judicata

The plaintiff's summary judgment motion rests on the argument that a final determination that the PWA applies to the SUCCESS contract was made in state court and principles of res judicata apply.  The plaintiff claims that "[w]ith regard to the issue of whether there has been a final determination . . . there is simply no question."  (Pl.'s Mem. Supp. Mot. for Summ. J. 5.)  Res judicata precludes the assertion of a claim after a judgment on the merits in a prior suit between the same parties.  *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004).  For this doctrine to apply, there must be:  (1) a final judgment on the merits in a prior suit; (2) an identity of the cause

of action in both the earlier and present suit; and (3) an identity of the parties or their privies.  *Id*. In this case, the third element clearly is not met.  In the prior suit, the parties were the Division of Labor and Pomeroy; in this case, the parties are Pomeroy and a former employee of Pomeroy. Based on an earlier finding of this court, the Division of Labor was not in privity with the plaintiff. To be in privity with a party to previous litigation, the nonparty must be "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved."  *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (citing *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 493 (4th Cir. 1981)).  On February 15, 2006, I ruled that the Division of Labor had no authority to bring the initial suit on behalf of the individual workers. *Taylor*, 2006 U.S. Dist. LEXIS 10172, at *9–10.  The plaintiff was not in privity with a party who had no authority to bring suit on behalf of him.  Res judicata does not apply.[4]

## IV. Rooker-Feldman

The plaintiff also argues that the *Rooker-Feldman* doctrine applies.  It does not.  The *Rooker-Feldman* doctrine deprives district courts of subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

---

[4] The first element also is in question based on the settlement agreement entered into by the Division of Labor and Pomeroy.  In paragraph nine, the Division of Labor agrees "to the dismissal of [sic] prejudice of all claims, actions or matters arising or relating to this matter including that certain administrative appeal pending in the Circuit Court of Kanawha County, Civil Action No. 00–AA–123, the Honorable Todd J. Kaufman presiding."  (Ex. J to Def.'s Mot. for Summ. J. at 5.)  The parties agreed to this settlement following enforcement problems.  By agreeing to release all claims, it is doubtful that the earlier decisions of the court regarding the applicability of the PWA can be considered "final" and "on the merits."  I, however, have no reason to analyze this question because the third element clearly is not met.

court proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The doctrine forbids

claims that "seek[] redress for an injury caused by the state-court decision itself" because they "ask[]

the federal district court to conduct an appellate review of the state-court decision."  *Davani v. Va.*

*Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).  In this case, the plaintiff's argument is

undermined by the fact that the plaintiff himself, and not the party the plaintiff alleges was the

"state-court loser," brought this action.  A state-court loser is not seeking this court to overturn a

state-court judgment.  The *Rooker-Feldman* doctrine, therefore, does not apply.


## *V. Conclusion*

The PWA does not apply to the SUCCESS contract because the contract was not for the

"construction of public improvements," and the earlier state-court proceedings implying otherwise

are not entitled to preclusive effect.  Accordingly, the court **GRANTS** the defendant's motion for

summary judgment [Docket 54], **DENIES** the plaintiff's motion for summary judgment [Docket 52],

and **DENIES as MOOT** the defendant's partial motion for summary judgment [Docket 56].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party**.**

ENTER:        July 20, 2006

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE